# EXHIBIT A

McIntyre v. CBP 21-3157. CBP responses to Plaintiff's 9/12/26 meet and confer Questions

FOIA Request No. 2020-013324: Copies of any and all documents related to complaints and complaint investigations related to the Border Patrol Training Academy between the years 1990 to 2000 and 2013 to the present.

Regarding the 36-page spreadsheet (Bates 000001–000036): The Agency maintains that the production of the 36-page spreadsheet was conducted in accordance with the scope of the request as narrowed by the Plaintiff. The Agency's search was designed to identify records responsive to the specific parameters established during the initial scoping phase for the periods of 1990–2000 and 2013–present. The volume of the production is a direct reflection of the records identified through that search process.

Regarding missing incident dates: The Agency notes that certain incident dates were withheld pursuant to FOIA Exemption 7(A). This exemption protects records or information compiled for law enforcement purposes when the production of such records could reasonably be expected to interfere with enforcement proceedings. Information regarding pending investigations, including specific incident dates, remains protected until such time as the investigation is formally concluded.

Regarding truncated case summary text: The Agency acknowledges the Plaintiff's concerns regarding the legibility of the data provided in the initial production. In an effort to ensure a complete and transparent response, the Agency is prepared to reprocess the native version of the spreadsheet. This will ensure that all case summary text is fully captured and provided in a readable format.

Regarding redacted station/sector information: CBP policy generally restricts the release of information at the station or port of entry level to protect the privacy and safety of personnel and complainants. While sector or field office information is typically disclosed, the Agency applies a heightened standard of review for records involving complaints against individuals. This redaction is necessary to ensure that the identity of the accuser is not inadvertently disclosed, consistent with the Agency's obligations to protect sensitive personnel information.

Regarding the Second Interim Response (Bates 000037–000110): The Agency acknowledges the Plaintiff's request for clarification regarding the scope of this production. These records were identified as responsive because they were contained within investigative files pertaining to the Border Patrol Training Academy. The Agency maintains that its search was conducted in good faith to identify all records within the scope of the Plaintiff's request.

Regarding the Plaintiff's interest in the master spreadsheet: The Agency understands that the Plaintiff's primary objective is to obtain a comprehensive version of the

spreadsheet produced in the First Interim Response. As previously noted, the Agency is prepared to reprocess the native version of that spreadsheet to ensure all data is captured in a readable format. The Agency believes this will address the Plaintiff's concerns regarding the scope and content of the records produced to date.

Regarding the Third Interim Response (Bates 000111–000335): The Agency notes the Plaintiff's observation regarding the relationship between the spreadsheet and the supplemental records produced. The spreadsheet provided in the First Interim Response serves as a summary of investigative activity. The documents produced in the Third Interim Response are provided as supplemental records to provide further context to the investigative process. The Agency maintains that these records were identified through a diligent search and are responsive to the Plaintiff's request. The Agency is committed to ensuring that the production remains consistent with the scope of the request and will continue to work toward providing a comprehensive and transparent response.

FOIA Request No. 2020-013867: Any and all documents related to complaints and investigations into the use of 'rape tables' and hazing rituals in the CBP between 2009 and the present, including but not limited to records related to the 2017 incident in Newark involving CBP officers being assaulted on a 'rape table' at the Newark Airport in Newark, New Jersey.

Regarding the Fourth Interim Response (Bates 000334–000431): The Agency acknowledges the Plaintiff's concern regarding the volume of this production and the stated focus on the spreadsheet provided in the First Interim Response. In light of the Plaintiff's expressed priorities, the Agency is shifting its processing focus to prioritize the completion and refinement of these records. The Agency is currently processing 586 pages and 10 videos associated with this request. By prioritizing these materials, the Agency aims to address the Plaintiff's primary interests in a more efficient and transparent manner. The Agency remains committed to a comprehensive production and will continue to provide these records on a rolling basis as the processing of the remaining materials is finalized.

Regarding the Fifth Interim Response (Cover email dated 11/26/2025): The Agency acknowledges the Plaintiff's inquiry regarding the status of the 611 pages previously submitted for inter-agency consultation. The Agency can confirm that the consultation process has concluded and the records have been returned to CBP. CBP is currently finalizing its review of these materials and intends to produce them in the next interim response. We appreciate the Plaintiff's patience as we complete this final stage of processing to ensure all responsive, non-exempt records are provided.

Regarding the Sixth Interim Response (Cover email dated 12/31/2025): The Agency clarifies that the 654 pages identified as duplicates are duplicates of responsive records that have been undergoing review and processing. The processing of these materials was unfortunately delayed due to government shutdowns. The Agency intends to produce the responsive pages associated with these duplicates in an upcoming interim response.

Strategic Pivot and Processing Priorities: In light of the Plaintiff's expressed priorities, the Agency is shifting its processing focus to prioritize the completion and refinement of the records identified above. The Agency notes that the current volume of records is based on the current scope of the request. Should the Plaintiff choose to narrow the scope of the request to focus exclusively on the master spreadsheet, thereby excluding the underlying full incident reports, the Agency would be happy to adjust the processing plan accordingly. This would likely result in a significant reduction in the volume of records requiring further review and production, allowing the Agency to prioritize the delivery of the spreadsheet and the most relevant data.

Regarding the Eighth Interim Response (Bates 000434–000436): These records were produced in response to the Plaintiff's request for "copies of any and all documents related to complaints and complaint investigations related to the Border Patrol Training Academy between the years 1990 to 2000 and 2013 to the present." The Agency notes a contradiction in the Plaintiff's position. The Plaintiff has previously stated that they are "not requesting that the Agency produce further full incident reports" and that their primary interest is the master spreadsheet. However, the current objection suggests a desire for additional full incident reports. The Agency's search was diligent and comprehensive. To ensure the efficient and productive resolution of this matter, the Agency requests that the Plaintiff clarify their priority. If the Plaintiff's focus remains the master spreadsheet, the Agency will prioritize that production. If the Plaintiff instead requires the full incident reports, the Agency will continue that processing, but the Plaintiff must acknowledge that this will necessarily impact the timeline for the spreadsheet production. The Agency cannot simultaneously prioritize both without impacting the overall processing schedule.

Strategic Pivot and Processing Priorities: In light of the Plaintiff's expressed priorities, the Agency is shifting its processing focus to prioritize the completion and refinement of the records identified above. The Agency notes that the current volume of records is based on the current scope of the request. Should the Plaintiff choose to narrow the scope of the request to focus exclusively on the master spreadsheet—thereby excluding the underlying full incident reports—the Agency would be happy to adjust the processing plan accordingly. This would likely result in a significant reduction in the volume of records requiring further review and production, allowing the Agency to prioritize the delivery of the spreadsheet and the most relevant data.